COOMBES, APPELLANT, *v.* LETCHER ET AL., RESPONDENTS.

(No. 7,632.)

(Submitted March 8, 1937. Decided March 31, 1937.)

[66 Pac. (2d) 769.]

*Mr. John A. Stagg* and *Mr. S. P. Wilson,* for Appellant, submitted a brief; *Mr. Wilson* argued the cause orally.

*Mr. T. J. Davis,* for Respondent Pacific Finance Corporation, submitted a brief and argued the cause orally.

*Mr. William B. Jones,* for Respondent Montana Rural Rehabilitation Corporation, submitted a brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action for damages for personal injuries. On February 14, 1935, the plaintiff, accompanied by her husband, the owner and driver of a Ford pick-up truck, was driving from Drummond to their home at Jens, Montana. The back of the truck was open, with a cover or top over the driver's seat. The plaintiff was carrying a small child in her arms, and two sons, aged three and five years, were asleep in the back part of the

truck covered with blankets. It appears that the accident oc-
curred shortly after midnight. Between 11 and 12 o'clock on
the night of the 13th the plaintiff and family left Drummond
traveling east, and on reaching a point approximately three
miles east of Drummond they ran out of gasoline; the husband
and wife pushed the truck to the right side of the road and the
husband started back to Drummond on foot to get gasoline. It
was a bright moonlight night, and the plaintiff alleges that the
lights were turned on in the truck in which she was sitting, with
the child in her lap, waiting for the husband to return. Just
after midnight the defendant Letcher, traveling also to the east,
crashed into the rear of the truck containing the wife and
children, knocking the truck off the grade and throwing the
children and the wife out of the truck to the ground. The
plaintiff was severely cut about the cheek and face, and a por-
tion of her nose almost severed so that it hung by the skin on
one side, but, being replaced by the attending physician, grew
back into place. The plaintiff was otherwise bruised and hurt
and, being pregnant at the time, complained of unusual suffer-
ing and pain during the period of her pregnancy and after-
wards. While suffering severely from the injury, she appar-
ently recovered a reasonable degree of her former good health,
but her face was badly marred by the cut across the nose, and
it is alleged that she was left in a very nervous condition due to
the accident.

The defendant Letcher was driving a new Ford truck and had
been hauling hay from different points in the surrounding
country to Drummond and Avon for the Montana Rural Re-
habilitation Corporation. At the time of the accident Letcher
was on his way home after having delivered a load of hay at
Drummond. The truck was purchased from the Powell Motors
of Deer Lodge, Montana, on a conditional sales contract which
had been assigned to the defendant Pacific Finance Corporation,
The Reconstruction Finance Corporation and the Regional
Agricultural Credit Corporation, governmental agencies of the
United States, were included as defendants with Letcher, the

Pacific Finance Corporation, and the Montana Rural Rehabilitation Corporation. In addition to the foregoing facts, the complaint alleges that the Pacific Finance Corporation, by reason of having title to the truck driven by Letcher, was responsible for the injuries suffered by the plaintiff, and the Montana Rural Rehabilitation Corporation is made a defendant on the assumption that the relationship of employer and employee, or master and servant, existed between such corporation and the driver of the truck by reason of the fact that the latter was engaged in hauling hay for such corporation.

The five defendants separately demurred to the complaint, all of which demurrers were overruled by the court. Thereafter the defendants Reconstruction Finance Corporation and Regional Agricultural Credit Corporation answered, denying any connection whatever with the driver of the truck that caused the accident, and counsel for plaintiff, admitting that plaintiff had no evidence to connect them with the accident in any particular, made no objection to a motion to dismiss the action as to these two corporations. The three remaining defendants severally answered, each denying all the material allegations of the complaint which in any manner tended to attach liability to either, and alleged, as affirmative defenses, the contributory negligence of plaintiff's husband.

Defendant Letcher, who was operating the truck that crashed into the plaintiff, alleges that he was driving a new V–8 Ford truck which was in excellent running condition, with lights on, going in an easterly direction and on the oiled highway, on the right-hand side of the road; was operating the car in a prudent and careful manner, and that while so driving, and without any warning, an object appeared in front of him which afterwards proved to be an old Model T Ford pick-up truck, which did not come within the vision of the defendant's lights until he was within a few feet thereof; that he immediately applied the brakes, which were in good condition, and attempted to turn to the left but was unable to clear the rear end of the other truck; that oncoming traffic was not warned in any manner, and that

the parked truck was in the direct path of oncoming traffic and displayed no lights of any character.

The affirmative matter in the several answers was denied by the reply. The cause was tried by the court sitting with a jury. Oral and documentary evidence was received for and on behalf of the plaintiff and she rested; whereupon Pacific Finance Corporation and Montana Rural Rehabilitation Corporation each separately moved for nonsuit, which, after argument, was granted and the hearing proceeded with against the defendant Letcher. After the evidence was introduced and the parties rested, the court instructed the jury, which thereafter brought in a verdict in favor of the plaintiff and against John W. Letcher and assessed the damages at $50. Plaintiff moved for a new trial against Letcher and the two corporations, which was denied. Plaintiff appeals from the judgments entered pursuant to the court's order dismissing the action as to Pacific Finance Corporation and Montana Rural Rehabilitation Corporation, and from the judgment entered on the verdict as to Letcher.

Counsel for plaintiff, in harmony with appropriate assignments of error, contends: (1) That the Pacific Finance Corporation was the owner of the truck which was the moving cause of the appellant's injuries and was responsible for the negligent operation of the truck; (2) that the relation of master and servant existed between the Montana Rural Rehabilitation Corporation and the operator of the truck; and (3) that appellant is entitled to a new trial upon the ground of inadequacy of the damages awarded by the jury.

Taking up the first contention, the truck that the defendant Letcher was driving at the time was purchased from the Powell Motors on a conditional sales contract, and such contract was assigned by Powell Motors to the defendant Pacific Finance Corporation. Counsel for plaintiff, in order to sustain his contention that the Pacific Finance Corporation was liable for the injuries to the plaintiff, introduced evidence to establish the fact that the Powell Motors, as the assignor of the Pacific Finance

Corporation, was the registered owner of the truck driven by Letcher as shown by the records of the Registrar of Motor Vehicles at Deer Lodge. Conditional sales contracts, such as that executed by the defendant Letcher and delivered to the Powell Motors, and now held by the Pacific Finance Corporation, are authorized by section 7594, Revised Codes 1921. Section 1758.3 of the Revised Codes of 1935, which was in effect at the time the conditional sales contract was executed, provides in subdivision (c) thereof that the seller of a motor vehicle on a conditional sales contract shall be registered as the legal owner under the provisions of the registration of the Motor Vehicle Act. It is contended that the contract gives the purchaser no right of possession; but while the contract does not expressly provide for such possession, it is clear that the sole purpose for which such contracts are authorized, made, and executed, is that the title may be held in the seller as security for the payment of part or all of the purchase price while possession of the thing sold is given to the buyer. The statute clearly recognizes conditional sales contracts as a legal method of protecting the seller for such part of the purchase price as may be unpaid, and such an arrangement furnishes no substantial grounds upon which the one who holds title may be held liable in damages in actions such as that at bar.

The rather unusual contention is made that by reason of the seller of the truck making a profit out of the sale he thereby becomes responsible for the negligent operation of the truck in the hands of the purchaser. If plaintiff had shown by any substantial evidence that the seller of the truck had any arrangements with the defendant Letcher by which the seller or its assignee would receive any profit by reason of the operation of the truck in hauling hay for the government, then the holder of the conditional sales contract could be made liable as a partner of Letcher; but there was no such evidence in the record, and we think there is no merit in the contention of plaintiff that the Finance Corporation is in any way liable here.

We think the correct relation of the parties to such a contract is clearly set out by Chapter 261 of the Forty-eighth Session Laws of California of 1929, wherein it is provided that if a motor vehicle be sold under a contract of conditional sale whereby the title to such motor vehicle remains in the vendor, such vendor or his assignee shall not be deemed an owner within the provisions of that section which holds the registered owner of such a vehicle generally responsible for personal injuries, but that the vendee or his assignee shall be deemed the owner, notwithstanding the terms of such a contract, unless and until the vendor or his assignee shall retake possession of such motor vehicle; and all decisions of the courts that we find hold such parties to a conditional sales contract to responsibility for accidents and injuries in substantial harmony with the California statute. True, 4 Berry on Automobiles, seventh edition, section 4492; *Ferris* v. *Sterling*, 214 N. Y. 249, 108 N. E. 406, Ann. Cas. 1916D, 1161 and *Giblin* v. *Dudley Hardware Co.*, 44 R. I. 371, 117 Atl. 418, cited by appellant, hold in substance that proof of ownership of a motor vehicle raises the presumption of liability of the owner for such accidents as that involved here. That is the established rule in this jurisdiction, and generally elsewhere, but it is a rebuttable presumption (*Wilcox* v. *Smith*, 103 Mont. 182, 62 Pac. (2d) 237; *Monaghan* v. *Standard Motor Co.*, 96 Mont. 165, 173, 29 Pac. (2d) 378), and if proof is made that the vehicle is under the control of another when an accident occurs and not in use in the line of the owner's business, the registered owner is not liable.

Taking up the question of the liability of the Montana Rural Rehabilitation Corporation, all the corporate defendants having been eliminated except the one just mentioned, that corporation will hereafter be referred to as the corporation.

Contention (2) raises the question as to whether the relation of employer and employee, or master and servant, existed between the corporation and Letcher at the time of the accident, or whether Letcher was an independent contractor; but, even if the relation of employer and employee be established, it would

then be necessary to establish the further fact that at the time of the accident Letcher was in the line of his employment.

Counsel for the corporation contends that Letcher was an independent contractor and presents an array of authorities to support such contention. If Letcher was an independent contractor the corporation, of course, was not liable. The question is a close one under the facts and circumstances here, but we think its determination is immaterial to the solution of the controversy for the reason that the defendant Letcher was not in the line of his employment at the time of the accident, a phase of the question that will be reverted to later.

The question as to when one is an independent contractor, or an employee or servant, is exhaustively considered by the following authorities, amongst others: 14 R. C. L. 67; 2 Cooley on Torts, 3d ed., p. 1098; 31 C. J. 473; *Nichols* v. *Hubbell, Inc.,* 92 Conn. 611, 103 Atl. 835, 19 A. L. R. 226; *Chicago, R. I. & P. R. Co.* v. *Bennett,* 36 Okl. 358, 128 Pac. 705, 20 A. L. R. 684; *Fidelity & C. Co.* v. *Industrial Acc. Com.,* 191 Cal. 404, 216 Pac. 578, 43 A. L. R. 1312; *Murray's Case,* 130 Me. 181, 154 Atl. 352, 75 A. L. R. 720, and cases cited. The question has arisen in this jurisdiction in the following cases: *De Sandro* v. *Missoula Light & Water Co.,* 48 Mont. 226, 136 Pac. 711; *Shope* v. *City of Billings,* 85 Mont. 302, 278 Pac. 826; *Jensen* v. *Barbour,* 15 Mont. 582, 39 Pac. 906; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673; *Poor* v. *Madison River Power Co.,* 38 Mont. 341, 99 Pac. 947; *Harrington* v. *H. D. Lee Mercantile Co.,* 97 Mont. 40, 33 Pac. (2d) 553; *Nelson* v. *Stukey,* 89 Mont. 277, 300 Pac. 287. For the reason heretofore stated, this question will not be further considered here, except such reference as is made to it in connection with other questions.

The question of Letcher's negligence and liability was determined by the jury and, as such negligence and liability are supported by substantial evidence, further consideration of that phase of the matter is also unnecessary.

The evidence, in substance, establishes the facts that Letcher was hauling hay by the ton from points in the surrounding

country to Avon and Drummond, for which he was paid by the ton, but had no written contract. He furnished his own truck, gasoline, and other supplies, hired his own help, and loaded the hay in cars at the railway points named, and there his duties to his employer ended. All the hay hauled by Letcher was picked up north and northwest of the railway points where he loaded the hay in the cars. Letcher's home was in Granite county, east and south of Drummond, and when his hauling and loading into the railway cars was done for the day he drove to his home in the truck that was used to haul the hay. The evidence establishes the fact that he was in the employ of, and was hauling the hay for, the Montana Rural Rehabilitation Corporation. He was employed generally to haul but not employed to haul any particular hay or any specific amount, and could be discharged at any time and, on his part, could quit hauling any time he chose. On the day of the accident he had been delayed by bad roads and did not get his last load transferred into the railway car until near midnight, and immediately thereafter started for his home in Granite county.

Raymond J. Quigley, called as a witness for the plaintiff, testified, in substance, that it was his work to make inspection of some of the hay and gather data in regard to the number of tons each buyer purchased; that the hay was handled by the Montana Rural Rehabilitation Corporation, and was distributed under Mr. Clarkson and Mr. Quinn to ranchers and people throughout Montana. "My work was the distribution of this hay in the set-up of the Montana Rural Rehabilitation Corporation. I received orders from Mr. Clarkson and Mr. Quinn. He [Letcher] might haul one load or ten loads. We could stop him any time as there was no definite contract. * * * I was paid by the Relief Commission. * * * I was not paid by the Montana Rural Rehabilitation Corporation. My checks were Relief Commission checks; and I think all of the checks issued were. All arrangements were that Mr. Letcher furnish his own truck, gasoline and oil and other automobile fuel and expenses; he

could hire his own employees—helpers, without our saying who they should be.''

After a careful consideration of all the facts and circumstances, and a review of the many authorities, we are of the opinion that whether Letcher was an employee of the corporation or an independent contractor while he was engaged in transporting the hay, from the places where it was located when purchased by the corporation, to Drummond and Avon and other points is immaterial in this controversy. We call attention, however, to these conditions of his employment: He was put to work without any definite contract; he, along with other truckers, hauled by the ton; he had no particular job but hauled from where directed; he could be discharged at any time without such discharge giving rise to a right of action for breach of contract, and such conditions of employment do not, as a rule, mark the independent contractor. When, however, he had transported the hay from where it had been purchased to the railroad point where it was loaded on the cars and control over it released to others, his status as an employee of the corporation ceased, irrespective of how he might be classed in his employment. When he had finished his day's work at Drummond on the day of the accident, and, in his own truck, started for his home in Granite county, practically in the opposite direction from where he loaded the hay to haul it to Drummond, he was not about his employer's business and his employer was not responsible for the manner in which he operated his truck upon the highways or elsewhere. This view is supported by the case of *Monaghan* v. *Standard Motor Co.*, 96 Mont. 165, 29 Pac. (2d) 378, which has many features in common with the action at bar. In that case an employee of the owner of the truck borrowed the truck after working hours to haul a load of crates and boxes on which the employer's name appeared, from the employer's premises to the employee's home, which were to be used for the employee's own purposes, and we held that while transporting such material under such circumstances he was not

about his master's business and his master was not responsible for his tort.

There are cases that have arisen under the Workmen's Compensation Acts, where under particular circumstances (*Herberson* v. *Great Falls Wood & Coal Co.*, 83 Mont. 527, 273 Pac. 294), it has been held that employees come under the provisions of such Acts if injured while on the way to and from their places of employment, but the general rule is to the contrary. (*Murray Hospital* v. *Angrove*, 92 Mont. 101, 10 Pac. (2d) 577; *Caviness* v. *Driscoll Const. Co.*, 39 N. M. 441, 49 Pac. (2d) 251; *Edwards* v. *Industrial Com.*, 87 Utah, 127, 48 Pac. (2d) 459; *Carter* v. *Department of Labor and Industry*, 183 Wash. 86, 48 Pac. (2d) 623; *Lumbermen's Mut. Casualty Co.* v. *Industrial Acc. Com.*, 134 Cal. App. 131, 25 Pac. (2d) 22; *Jenks* v. *Carey*, 136 Cal. App. 80, 28 Pac. (2d) 91; *Palmer* v. *Terteling & Sons*, 52 Idaho, 170, 16 Pac. (2d) 221; *In re Finley*, 141 Or. 138, 16 Pac. (2d) 648; *March* v. *State Industrial Acc. Com.*, 142 Or. 246, 20 Pac. (2d) 227; *Hartford Acc. & Ind. Co.* v. *Lodes*, 164 Okl. 51, 22 Pac. (2d) 361.)

Counsel further contends that whether Letcher was an independent contractor or an employee was a question for the jury and that the court was in error in granting the motion for nonsuit. We do not agree with counsel for the reasons already stated, and for the further reason that the facts are not in dispute and the question was one of law. (*De Sandro* v. *Missoula Light & Water Co.*, supra.)

Plaintiff's last contention is that the award made by the jury is grossly inadequate. Counsel for plaintiff contends, and the proof is sufficient to justify the contention, that plaintiff's nose was practically severed from her face and that her cheek was slashed severely. We think it would be more nearly correct, according to the proof, to say that a part of the nose was severed, but without question the plaintiff suffered painful and severe injuries. The reasonable value of the physician's services for attending plaintiff was $75 to $80. Plaintiff was in a pregnant condition and suffered greatly from shock,

from bruises and otherwise. She and her babies were hurled from their truck and scattered about the ground. It appears almost miraculous that the mother and young children did not suffer more serious injuries. Plaintiff contends, and we think such is the rule, that a verdict as to the amount of the award will be set aside because of inadequacy as well as for being excessive.

All of the defendants have been exempted from liability except Letcher; a new trial will be ordered as to him on the ground of inadequacy of the amount of the award.

In the cases following the appellate court either ordered a new trial or an increase of the amount of the award; the one method or the other being followed, depending upon the procedure authorized in the particular jurisdiction: *Valvo* v. *Star Box & Lumber Co.*, 248 App. Div. 614, 287 N. Y. Supp. 940; *Gallagher* v. *State*, 248 App. Div. 663, 288 N. Y. Supp. 2; *Kraas* v. *American Bakeries Co.*, 231 Ala. 278, 164 So. 565; *Ulrich* v. *Kiefer*, (Mo. App.) 90 S. W. (2d) 140; *Knight* v. *Duggan*, 163 Wash. 107, 299 Pac. 986; *Barney* v. *Anderson*, 116 Wash. 352, 199 Pac. 452.

We deem the amount of the award entirely inadequate as compared to the damages suffered, and the judgment as to Letcher is reversed and the cause remanded for a new trial.

MR. JUSTICE STEWART concurs.

MR. JUSTICE ANGSTMAN, Concurring Specially:

I concur in the result reached in the foregoing opinion, but cannot subscribe to all that is stated therein.

It is my view that under the facts in this case, which are fairly stated in the opinion written by Mr. Justice Morris, and under the prior decisions of this court cited in that opinion, and under the principles of law announced in *Ashley* v. *Safeway Stores*, 100 Mont. 312, 47 Pac. (2d) 53, the defendant Letcher was an independent contractor, and the doctrine of *respondeat superior* has no application. Defendant Letcher had

the sole control over his own operations, so far as the means and methods of carrying out the details of his work were concerned, and the Montana Rural Rehabilitation Corporation was interested only in the result of his work; it having no control over the means or method of accomplishing it. Letcher being an independent contractor, and not a servant, of the Montana Rural Rehabilitation Corporation, it is in no way responsible for his negligence.

Believing, as I do, that the defendant Letcher was an independent contractor, it follows that at no time was he a servant of the corporation. I cannot find in this case the necessary criteria from which to determine that Letcher was a servant of the corporation but, at the time of the accident, was acting without the scope of his employment.

I agree that the verdict is inadequate and that a new trial should be granted as against the defendant Letcher. However, there are cases cited in the opinion of Mr. Justice Morris in support of the conclusion that the verdict is inadequate, wherein the court ordered the award increased. By agreeing that the verdict is inadequate I am not to be understood as subscribing to the view that it is ever proper for this court in personal injury cases to increase an award of damages. I think our only right in such a case is to send the case back for a new trial, before the jury, as we are doing here.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICE ANDERSON concur in the foregoing concurring opinion.